Nicholas M. Pette, J.
The defendant The Long Island City Savings and Loan Association, in this action for a declaratory judgment, moves for an order pursuant to rule 106 of the Buies of Civil Practice, dismissing the complaint herein on the ground that the same does not state facts sufficient to constitute a cause of action.
The material allegations of the complaint are substantially as follows:
That plaintiff is a member of defendant association, organized pursuant to the provisions of article X of the Banking Law;
That on April 18, 1962, amendments to the association’s by-laws were adopted as follows:
ARTICLE I
1.02 Votes at meetings of members shall be east either in person or by proxy provided such proxies have been filed with the Secretary five days in advance of such meeting. A plurality of the number of shares represented by said votes shall govern the conduct of the meeting and resolve any issues thereat, except as otherwise provided by statute.
ARTICLE II
2.03 Special meetings of the members shall be called at the direction of the .¡President, or upon written request of the majority of the Board of Directors, or at the request of the members holding of record at least 5% of the share capital of the Association. No business, other than specified in the notice of the meeting, shall be transacted at a special meeting.
2.04 The Board of Directors, at least thirty days prior to the annual meeting, shall appoint a nominating committee of four members. Such committee shall make nominations for Directors in writing, deliver to the Secretary such written nominations at least twenty-five days prior to such annual meeting, which nominations shall be posted in a prominent place at the office of the Association at least twenty-five days prior to such annual meeting. Any further nominations for Directors may be made on written petition of members holding of record at least 5% of the share capital of the Association, filed with the Secretary twenty days prior to such annual meeting and posted by the Secretary as above. Thereafter, no *813 nominations shall be filed. If, at any time, the Board of Directors shall fail to appoint such nominating committee, or the nominating committee shall fail to act at least twenty-five days prior to annual meeting, nominations for Directors may be made at the annual meeting by any member and shall be voted upon.
ARTICLE III
3.01 The business of the Association shall be conducted under the direction of a Board of Directors of not less than seven nor more than fifteen members. The number of Directors within such limits shall be fixed by a two-thirds vote of the Board of Directors. Directors shall be elected to serve for a term of three years and shall be divided as nearly as possible, into three classes; the term of one class to expire each year. At each annual meeting, the necessary number of Directors shall be elected to fill the expiring terms and any vacancies for the balance of the terms of the Directors whose offices became vacant.
That the amendments were not submitted to the members of the association for their consideration.
The complaint alleges that the following provisions of the by-laws are improper and illegal:
A. Section 2.04. Requirement of a written petition signed by members holding of record at least 5% of the share capital of the association and filed 20 days prior to the annual meeting, to nominate directors, is allegedly 11 vague and uncertain, improper, unfair, illegal and unreasonable
B. Section 2.04. Requirement that nominating petitions be filed with the secretary 20 days prior to the meeting is allegedly “ improper and illegal ” in that it limits members to a prescribed list of nominees.
0. Section 1.02. Requirement that proxies be filed with secretary 5 days in advance of meeting is ‘ ‘ unfair, improper and illegal ”.
D. Section 2.03. Requirement that special meeting may be called only upon petition of members holding of record at least 5% of the share capital of the association is allegedly “ unfair, improper, illegal and unreasonably burdensome ”.
The complaint finally alleges that the director,s have adopted a policy of obtaining from new members of the association a five-year proxy and that such members are not apprised of the nature and importance of the action taken in executing the proxy.
The complaint demands that sections 2.04,1.02 and 2.03 of the by-laws be set aside, that all proxies obtained by the association from new members be declared invalid and that a temporary injunction issue.
No answer has been interposed to the complaint.
*814 Rule 210 of the Rules of Civil Practice provides that in actions for a declaratory judgment pursuant to section 473 of the Civil Practice Act, in matters of procedure, the action shall follow the forms and practices prescribed in the Civil Practice Act and Rules of Civil Practice for other actions in the Supreme Court.
A pleading challenged for insufficiency must be construed broadly and liberally (Civ. Prac. Act, § 275; Wainwright & Page v. Burr & McAuley, 272 N. Y. 130; Condon v. Associated Hosp. Ser., 287 N. Y. 411).
The allegations of fact stated in the complaint are, for the purposes of this motion, assumed to be true (Locke v. Pembroke, 280 N. Y. 430; Hart v. Hart, 274 App. Div. 836) and any reasonable inferences that may be drawn therefrom (Garvin v. Garvin, 306 N. Y. 118, 120), but not the legal conclusions drawn by the pleader nor his interpretation of any statute involved in the action (Greeff v. Equitable Life Assn. Soc., 160 N. Y. 19, 29; McCormick v. Westchester Lighting Co., 142 Misc. 27; Hanna v. Lichtenhein, 225 N. Y. 579) nor facts of which the court will take judicial notice as untrue (Baxter v. McDonnell, 18 App. Div. 235). The correctness of any inference drawn by the pleader from the facts alleged are not admitted (Maylender v. Fulton County Gas & Elec. Co., 131 Misc. 514, 518; Greeff v. Equitable Life Assn. Soc., supra; Wenk v. City of New York, 171 N. Y. 607).
The complaint in the case at bar is replete with conclusions, barren of any factual showing upon which such conclusions may be based. Pacts must be alleged, not conclusions (Walrath v. Hanover Fire Ins. Co., 216 N. Y. 220, 224). The pleader’s interpretation of the effect of the by-laws is speculative and also renders it somewhat hypothetical in form, so that the complaint is insufficient in law and, therefore, subject to dismissal for legal insufficiency (Strook Plush Co. v. Talcott, 129 App. Div. 14; Nivogor Realty Corp. v. Gifford-Wood Co., 253 App. Div. 837).
An action for a declaratory judgment is, of course, brought to settle forever the rights of all interested parties (Utica Mut. Ins. Co. v. Hamera, 162 Misc. 169). And under the law all persons who may be affected.thereby must be joined as parties (Gilligan v. Cunningham, 273 App. Div. 1046; Bach v. Grabfelder, 233 App. Div. 773).
Plaintiff in his complaint repeatedly refers to the alleged adverse effects the subject by-laws have upon members of the association, thereby acknowledging that they are allegedly affected thereby. It is significant, however, that none of said affected members have been joined as parties in this action.
*815 Plaintiff suggests — although he does not allege it directly — that there was some procedural impropriety in the association’s amendment of its by-laws in April, 1962 by asserting in paragraph Fourth of the complaint that the amendments were not “ submitted to the members of the Association for their consideration and approval or disapproval”, and repeats that allegation in paragraph Ninth.
Subdivision 1 of section 402 of the Banking Law sets forth the procedure for amending by-laws, as follows: “§ 402. Amendment of articles of association and by-laws; application to supreme court. 1. Any proposed change in the articles of association or the by-laws of any savings and loan association shall be submitted to the superintendent and, upon the superintendent’s written approval thereof, shall be posted in a conspicuous place in the office of the association for thirty days. Such proposed changes may thereafter be incorporated in the articles of association or the by-laws of the association by being duly adopted by its directors. A copy of such change shall be filed in the office of the superintendent within thirty days after such adoption.” Plaintiff has admitted the adoption of the amendments to the by-laws and their filing with the Banking Department. The only point plaintiff raises is the alleged failure to submit the amendments to the members for their consideration and approval or disapproval — a requirement not specified in the governing statute. Accordingly, the by-laws were properly adopted as prescribed by the Banking Law and approved by the Banking Department.
By-laws governing elections, filing of proxies in advance, nominations for directors, etc., are essential to orderly procedure in the internal management of a large institution such as the defendant association and so long as such by-laws are not contrary to its charter, a controlling statute, or violative of any general law or public policy, the courts will not say that they are illegal or invalid (Banking Law, § 376; Booker v. First Fed. Sav. & Loan Assn., 215 Ga. 277).
There is no claim that the by-laws violate any provisions in the association’s charter; nor is there any conflict with the applicable statute. The Banking Department which has primary responsibility for protecting the public interest in this field has approved the subject by-laws thus indicating that they are consistent with the public interest, are not against public policy and do not violate any statute.
The by-law providing that a proxy must be filed with the secretary of the association at least five days in advance of the annual meeting is a reasonable and valid requirement (Booker v. *816 First Fed. Sav. & Loan Assn., supra; 5 Fletcher’s Cyclopedia Corporations, § 2058). A recent New York decision enforced a by-law which required proxies to be lodged with the company prior to the meeting (Matter of Skora v. Great Sweet Grass Oils, 30 Misc 2d 572, 578). 'Such a by-law provision is particularly necessary in a savings and loan association which has thousands of depositor members whose votes are dependent on the amount of their savings on deposit as of a certain date, as in the case at bar. Time is required to check each proxy against the ledger cards to determine the number of votes to which each member is entitled. Therefore, the challenged by-law provision here is not only reasonable, but essential to the conduct of an orderly meeting.
The by-law providing that independent special meetings of shareholders may be called only upon request of members holding of record at least 5% of the share capital of the association is a reasonable and valid requirement. Plaintiff, by inference, concludes that the provision is “vague and uncertain” and argues that it is not possible to determine therefrom the correct number of members ‘ ‘ holding of record .at least 5 % of the share capital of the Association”. This court is of the opinion that such inference and conclusion and argument by plaintiff are without merit. Such a narrow interpretation and construction are unwarranted. Under a broad and liberal construction, permissible to sustain its validity, the fair inference and interpretation of the provision are that at the time the petition is filed with the secretary so that the member’s voting eligibility may be checked against the records, that is when the share capital of the association may be properly and correctly determined, so that there is nothing vague and uncertain in determining what the share capital of the association is at that time.
In the case of Matter of Weisblum v. Li Falco Mfg. Co. (193 Misc. 473, 477), the court gave judicial approval to a much more restrictive provision for the calling of special meetings than the one under attack in the case at bar. In that case involving the refusal of the corporation to call a special meeting on the petition of over 51% of the shareholders, the court stated: “ The by-law requiring the directors to call ‘ a special meeting of stockholders whenever so requested in writing by stockholders representing not less than 51% of the capital stock of the company ’ does not violate any provisions of law and is a legal and enforceable by-law and is binding upon the directors.”
Plaintiff’s charge that this by-law is against public policy is unfounded, is pointedly demonstrated by the fact that in many jurisdictions the frivolous calling of special shareholders’ meet *817 ings is restrained by statute providing that such meetings may be called only upon the motion of a much larger portion of the corporation’s shareholders than in the provision here under attack.*
The by-law providing that independent nominating petitions must be filed with the secretary of the association 20 days prior to the annual meeting is a reasonable and valid requirement.
An identical challenge to a similar by-law was raised in Matter of City Sav. & Loan Assn. (123 N. Y. S. 2d 852, 856-857) where the by-law required that independent nominations be filed with the secretary at least 10 days prior to the date of the annual meeting and that no other nominations could be voted upon. The court summarized the New York law on this point as follows:
“In Matter of Farrell the by-laws of the Brooklyn 'City Savings Loan Association provided that a meeting for the nomination of directors should be held at a date at least two weeks before the annual meeting. It further provided that other nominations might thereafter be made by petition filed with the secretary at least ten days before the annual meeting. At the meeting in question, the members voted to elect certain members who had not been nominated at all. The Appellate Division sustained their election saying:
“ ‘ The by-laws have no affirmative provision which prescribes that no one shall be eligible for election to the office of director of the association unless nominated as provided in section 40 of the by-laws. In the absence of such a provision in the by-laws, it must be concluded that section 40 is directory only, and not mandatory.’
“In a later case, Matter of O’Shea, 241 App. Div. 699, 269 N. Y. S. 840, 841, the Appellate Division pointed out that the by-laws in the Farrell case contained no affirmative provision prescribing that no one should be eligible to election to the office of director unless nominated as provided in the by-laws. The court distinguished the O’iShea case because the by-laws there under consideration provided for nominations.
“ ‘ First, by the nominating committee of the association, to be posted not less than two weeks prior to the annual meeting; second, by independent nominations, to be posted not less than *818 five days prior to such meeting; and, finally, that “ no candidates for directors shall be balloted for, other than those proposed in either one of these two ways.” Such provisions are not only reasonable but necessary.’
‘ ‘ In the instant case, Section 4 of Article 1 of the by-laws does contain an affirmative provision that where the nominating committee has made nominations, no other nominations shall be voted upon at the annual meeting unless made in writing and delivered to the secretary of the association at least ten days prior to the date of the annual meeting. The by-laws here follow the pattern of those in the O’Shea case rather than those under consideration in the Farrell case.
“ More recently the Court of Appeals, in Matter of Flushing Hospital & Dispensary, 288 N. Y. 125, 41 N. E. 2d 917, held that even where the by-laws permit of amendment at the annual meeting, so that provisions requiring nominations to be made prior to the meeting could be changed, the election of nominees made pursuant to such a change should be set aside where the long established custom of voting only for those previously nominated may have misled many members who failed to attend the meeting in the belief that the election was pro forma, there being only one set of prior nominations. The underlying philosophy of that case would seem to favor definiteness in nominations prior to elections. At the very least it cannot be said that a bylaw which would remove uncertainty in that respect is invalid.”
Similar by-law provisions requiring filing of independent nominations prior to the annual meeting have apparently been challenged in only two other savings and loan association cases. In both of these, the by-law was upheld (Booker v. First Fed. Sav. & Loan Assn., 215 Ga. 277, supra; Matter of Hamilton, 5 N. J. Misc. 660, 662). In the Booker case, the by-law was approved by and recommended for adoption by the Central Board of the Federal Home Loan Bank (Vol. 23, No. 249, Fed. Reg. p. 9897, 12 CFB, § 544.6, subd. [a]). In Hamilton, the court stated: “It is obvious that the requirement that nominations be made at a regular monthly meeting preceding the annual meeting is in the interest of the shareholders, so as to give them an opportunity to investigate the character and competency of the nominee and to bring about an orderly management of the business of the association. ’ ’
The challenged by-law requires posting by the secretary of the association in a prominent place at the office of the association, the name of an individual independently nominated for director, and the same requirement applies to the nominations by the nominating committee. The reason suggested by the *819 Supreme Court of New Jersey for such a by-law is, therefore, clearly correct, since its purpose is to inform the members of the association of the names of the nominees prior to the meeting to give them the opportunity of determining their respective qualifications.
Again referring to the by-law providing that independent nominations must be made on the written petition of members holding of record at least 5% of the share capital of the association, it is clear that said provision is to protect the association and its members from a conceivable deluge of frivolous nominations of persons having no genuine support or possibility of election. No member could intelligently select from among many slates of nominees since investigation of candidates would not be possible under such circumstances and the meeting itself would be chaos.
Plaintiff’s conclusion that the provision is a deprivation of his right to vote is without merit. The provision, in fact, protects his right to vote and the right to vote of all members. The right to vote would merely be preserved procedurally if unlimited and uncontrolled nominations were permitted as advocated by plaintiff. The members are far more able to exercise their meaningful right to vote when offered only two or three slates of candidates. The extent of democracy in a corporation cannot be measured by the number of slates of directors offered at a stockholders’ meeting. The 5% requirement will bar the frivolous nomineee and does not stand in the way of the serious candidate with membership support of at least 5% of the share capital of the association. A multitude of candidates might give the appearance of free choice but would destroy the democratic process essential in the government of a corporation such as the defendant association incorporated under the Banking-Law of this State.
The defendant association does not deny that the 5% requirement imposes some restriction, but the restriction is a reasonable and necessary one. The voters in a savings and loan association are essentially its debtors and creditors. Very few understand or know of their right to vote, but all have a real interest in stability and continuity of management and management policy. Unlike the stock corporation where growth and expansion of the business will cause the stockholders’ investments to appreciate in value, the creditors’ deposits in a savings and loan association cannot appreciate (except for dividends) and the borrowers’ debts cannot depreciate regardless of the identity of management. Yes, bad management can imperil the creditors’ deposits but, since the Federal Savings and Loan *820 Insurance Company insures all accounts up to $10,000, the creditors can sustain no loss.
It must be observed that banks are inherently sensitive to internal conflict. Wild election campaigns every year, seemingly an expression of democracy, would wreak havoc to the bank which must project itself to the public in terms of strength and stability. By-laws limiting nominees to those having at least some initial membership support are based upon good and sound reasons. The 5% provision attacked here does not bar plaintiff if he has membership support. It is .significant that in New York savings banks, the management is truly self-perpetuating with no right of depositors to vote for management (Banking Law, § 246). The Banking Department exercises the necessary control over savings banks — the same type of control which it exercises over savings and loan associations.
The Legislature itself recognized the difference between savings and loan associations and stock corporations and it is not contemplated that members will exercise control over management in the Banking Law. The law vests in the Superintendent of Banks and the Banking Board the power to remove directors and officers of an association (Banking Law, § 41). The Superintendent of Banks has approved the by-law attacked by plaintiff. This approval, even if not determinative, carries the greatest weight, and means that the regulating body having principal responsibility has concluded that said by-law is not contrary to public policy or the legitimate interests of the members of the association.
The complaint alleges that in soliciting proxies from new members, the association did not apprise them of the nature of the instrument and demands that all such proxies be declared invalid.
Proxies held by management and given by unnamed new members of the association may not be invalidated upon the basis of allegations to that effect in the complaint without the evidentiary facts identifying the members who executed the proxies, the number of such proxies and which of them should be invalidated, and otherwise supporting the conclusory allegations made with respect to such proxies. Plaintiff’s allegation with respect to these proxies recognizes that the new members who executed such proxies are interested parties. However, they are not only unnamed, but have not been made parties to the action. Under the law, all persons who may be affected thereby must be joined as parties (Gilligan v. Cunningham, 273 App. Div. 1046; Bach v. Grabfelder, 233 App. Div. 773).
*821 Defendant’s counsel correctly contends that such a claim is premature, not appropriate for a declaratory judgment, and is requested in an action in which the indispensable parties, i.e., the member and his proxy, are not named. Furthermore, the proxies in question will not be voted, if at all, until January, 1963 and all these proxies are revocable. Counsel also argues that possibly all who executed the disputed proxies will give new ones to management and that it is also possible that those not giving proxies to management may grant proxies to plaintiff and that some may appear at the meeting and vote in person.
In any event, the present existence of these revocable proxies in no way prejudices the plaintiff since his alleged rights can only arguably be affected when and if these proxies are lodged with the secretary pursuant to section 1.02 of the by-laws in January, 1963 and, until that time, no justiciable issue exists over which this court may assume jurisdiction.
There is no allegation in the complaint or showing that the number of said proxies in question would affect the outcome of the election and thereby affect the rights of the plaintiff. Judicial action with respect thereto would, therefore, present only a purely academic question.
The granting of a declaratory judgment is discretionary with the court. Belief has been withheld as unnecessary when an adequate remedy is already provided by another established form of action. ‘ ‘ When there is no necessity for resorting to the declaratory judgment it should not be employed.” (James v. Alderton Dock Yards, 256 N. Y. 298,305; Newberger v. Lubell, 257 N. Y. 383.) The Buies of 'Civil Practice also emphasize the discretionary jurisdiction of the court in declaratory judgment actions. “Buie 212. Jurisdiction discretionary. If, in the opinion of the court, the parties should be left to relief by existing forms of actions, or for other reasons, it may decline to pronounce a declaratory judgment, stating the grounds on which its discretion is so exercised.”
Not only is another and more appropriate remedy here available but it has been held that the judicial review of the validity of a corporate election can be had only pursuant to section 25 of the General Corporation Law (Matter of Moscowitz, 206 App. Div. 289 [1st Dept.]; Matter of Clarke, 186 App. Div. 216 [2d Dept.]; Hudson Riv., etc., R. R. Co. v. Kay, 14 Abb. Prac. [N. S.] 191). It was under section 25 of the General Corporation Law that this court reviewed the City Sav. & Loan case (123 N. Y. S. 2d 852, supra). Other remedies are suggested in the decisions of McGoldrick v. Rotwein (N. Y. L. J., Feb. 6, 1952, p. 508, col. 6). See, also, Matter of Young v. Jebbett (213 App. Div. 774) and Segal v. Bresnick (30 Misc 2d 569).
*822 It seems clear that at least one, if not two, entirely adequate remedies exist for the solution of any controversies that may arise as to the validity of proxies actually tendered for voting and, under such circumstances, the court in its discretion will not resort to a declaratory judgment (James v. Alderton Dock Yards, supra; Newberger v. Lubell, supra). The remedies available under article 78 of the Civil Practice Act and section 25 of the General Corporation Law permit the court to resolve a specific challenge to a specific proxy. As has been shown above, in this ease this court is asked to pass upon the general validity of an unspecified and unidentified number of proxies which may never actually be voted and, even if voted, may have no bearing on the outcome of the election. Such moot and academic questions cannot be the basis for an assumption of jurisdiction.
For the reasons hereinabove set forth, this court determines that the complaint herein fails to set forth facts sufficient to constitute a cause of action.
The complaint is dismissed under the provisions of rule 106 of the Rules of Civil Practice.

 Page’s Ohio Revised Code, tit. 17, chap. 1701, General Corporation Law, § 1701.48; Ann. Code of Maryland, art. 23, Corporations, § 38, subd. (c); West’s Ann. California Code, Corporations Code, § 2202; Purdon’s Pa. Statutes Ann., tit. 15, chap. 49B, Business Corporations, § 2852-501, subd. C; Smith-Hurd Illinois Ann. Stat., chap. 32, § 157.26. Some of these provisions are subject to various qualifications not herein pertinent.