In the Matter of the GOLDFIELD CORPORATION, Respondent, *v.* GENERAL HOST CORPORATION et al., Appellants.

First Department, February 23, 1971.

*Edwin E. McAmis* of counsel (*Lovejoy, Wasson, Lundgren & Ashton,* attorneys), for appellants.

*Robert L. Ellis* of counsel (*Amen, Weisman & Butler,* attorneys), for respondent.

NUNEZ, J. P. Petitioner, the Goldfield Corporation (Goldfield) seeks, under section 619 of the Business Corporation Law, to annul the annual shareholders meeting of the corporate appellant General Host Corporation (Host) held on August 13, 1970 and to set aside the election of directors and other resolutions adopted at that meeting.

On July 10, 1970, Host had 2,610,336 shares of common stock outstanding of which petitioner was the beneficial owner of 437,700 shares or 16.7%. Petitioner's shares had been pledged to secure certain notes to the Union Bank of Los Angeles; these notes were subsequently purchased by Host and assigned to it. Notice of the meeting was given to the stockholders of record as of July 10, 1970. In a proxy statement served with the notice it was stated that Goldfield owned 437,700 shares which were pledged to Host as security for loans; that if a default were called under the notes, the 437,700 shares would not be considered to be outstanding for purposes of the annual meeting. The proxy statement also revealed that Goldfield, as of June 30, 1970, had been in default in the payment of principal on one of the notes, and interest on both, but that, in order to avoid jeopardizing Goldfield's ability to continue operating and ultimately to repay, Host had "not attempted to enforce its rights and call a default." However, the proxy statement also stated that in the event that prior to the annual meeting a default were called under the notes, the shares would then be held by Host and would not be considered as being outstanding for purposes of the annual meeting. No objection to the notice or to the proxy statement was made by Goldfield although it received copies of both.

On July 13, 1970, in an action pending in the United States District Court for the Southern District of New York, Goldfield filed a cross claim against Host alleging that the notes were unenforceable. Host thereupon notified Goldfield that it was calling a default on the notes and demanded immediate payment. By a letter dated July 23, 1970, Host notified its stockholders of the default and stated that the stock securing the loan would not be considered outstanding for the purposes of the annual meeting.

The meeting was held on August 13, 1970. Present in person or by proxy were 1,766,301 shares of common stock excluding the pledged Goldfield stock. Petitioner was prohibited from voting its shares. Nevertheless, on each issue except the selection of auditors, petitioner's attorney, a proxyholder or a stockholder in his own right, fully expressed petitioner's position. Petitioner's principal officers also attended the meeting.

Goldfield did not nominate a competing slate of directors prior to the meeting; it did not solicit proxies or communicate with other stockholders; it did not attempt to enjoin or postpone the meeting; it did not attempt to have the right to vote its shares judicially determined. Host's management had received proxies from the holders of 1,591,372 shares; only a small number of

shares were represented in person at the meeting. The three management nominees, all of whom ran unopposed, each received 1,685,627 votes out of the 1,766,301 shares present and voting. The other proposals were adopted by the same vote. Thus, had Goldfield's shares been voted, the outcome of all actions taken at the meeting would have been the same.

A court should not interfere in the internal affairs of a corporation unless a clear showing is made to warrant such action. (*Matter of Hoe & Co.* [*Cullom-Rein*], 14 Misc 2d 500, 505, affd. 285 App. Div. 927, affd. 309 N. Y. 719.) Goldfield had approximately three weeks' notice that it would not be permitted to vote its shares at the annual meeting. The courts were available to determine its right to vote prior to the meeting. (See 5 Fletcher, Cyclopedia of Corporations, §§ 2071, 2072; *Segal* v. *Bresnick*, 30 Misc 2d 569, 570.) Goldfield's failure to nominate an opposition slate, to solicit proxies, to communicate its views to other shareholders (except orally at the meeting) coupled with the fact that a large majority of outstanding shares voted with management on every issue, all tend to clearly show that Goldfield is unable to meet its burden of establishing that if permitted to vote, the results would have been different. (3 White, New York Corporations [13th ed.], par. 619.04[1].)

There is a marked distinction between what a court will do before and after a corporate election. Before an election it will render any necessary assistance to a stockholder to allow him to vote, solicit proxies and the like. But if the election is held without prior application it becomes an unwarranted interference with internal corporate affairs to upset the election absent a showing that the relief sought would, if granted, change the result.

Goldfield charges that it was deprived of its right to vote its shares by virtue of Host's fraudulent concealment of the transfer of the record ownership on April 8, 1970, without notice to it. But the transfer of record ownership, concealed or not, did not affect the refusal to permit Goldfield to vote its stock. It was prohibited from voting, not because of a transfer of record ownership — proper in itself but allegedly concealed from Goldfield and the other shareholders — but due to a stated and repeated view that Goldfield would not be permitted to vote, whether as record owner or as beneficial owner, and its shares would not be considered outstanding after the declaration of a default on its loans. But even assuming that there was concealment of the transfer, the election may not be set aside unless the court concludes that the result would have been different had no such concealment taken place, or that it culminated in

an inequitable result. (See *Matter of Hoe & Co.* [*Cullom-Rein*], *supra*; *Matter of Doeskin Prods.*, 7 A D 2d 42, 46; *Matter of Green Bus Lines* [*Turner*], 166 Misc. 800 [STEUER, J.].)

Special Term denied appellants' cross motion for summary judgment positing two factual issues, i.e. whether Goldfield was a beneficial owner of the stock and entitled to be the registered owner and whether declaring a default on the notes after the notice of meeting had been announced had a proper basis. Goldfield has not demonstrated that it was improperly disenfranchised; it has not shown that had it been permitted to vote its shares the outcome of the election would have been different. The record establishes the contrary—that had Goldfield's vote been cast, the outcome of the meeting would have remained the same. In view of the foregoing no material triable questions of fact exist. Appellants' cross motion to dismiss should therefore have been granted.

The order, Supreme Court, New York County (SANDIFER, J.) entered October 20, 1970 should be reversed on the law and appellants' cross motion to dismiss the petition should be granted with costs and disbursements to appellants.

KUPFERMAN, McNALLY and STEUER, JJ., concur.

Order, Supreme Court, New York County, entered on October 20, 1970, unanimously reversed, on the law, the cross motion granted, the petition dismissed. Appellants shall recover of petitioner-respondent $50 costs and disbursements of this appeal.